# Merchants' Loan & Trust Co. v. Lorenzo J. Lamson et al.

1. ASSUMPSIT—*For Money Obtained Through a Felony.*—When money, transferred to an honest taker, has been obtained through a felony by the one transferring it, the honest taker who receives it without knowledge of the felony and in due course of business, acquires a good title to it as against the one from whom it was stolen.

2. SAME—*Bad Faith Alone Will Defeat the Right of the Taker.*— Mere ground of suspicion of defect of title, or knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker, will not defeat his title. Bad faith alone will defeat the right of the taker without knowledge. The test is honesty and good faith—not diligence.

3. INSTRUCTIONS—*Informing the Jury that Certain Facts Are Not Conclusive Evidence of one of the Ultimate Facts in Issue.*—Instructions which undertake to inform the jury that certain facts are not conclusive evidence of one of the ultimate facts in issue have frequently been condemned, irrespective of whether the proposition of law embodied is accurate or not.

4. SAME—*Requiring a Degree of Proof Which Would Convince the Minds of the Jury.*—An instruction which requires a degree of proof which would convince the minds of the jury is faulty, a mere preponderance being sufficient in law.

Assumpsit, for money wrongfully taken. Appeal from the Circuit Court of Cook County: the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed June 21, 1900.

GEORGE N. STONE, attorney for appellant.

WM. H. BARNUM and D. M. KIRTON, attorneys for appellees.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

This suit was brought in assumpsit by appellant, a banking corporation, to recover money alleged to have been wrongfully taken from appellant by one of its receiving tellers, and paid by him to appellees for losses in speculative deals and trades in grain, stocks, provisions, etc., made

through appellees as brokers upon the New York Stock Exchange and on the Board of Trade of the city of Chicago.

One Ross C. Van Bokklen was teller of appellant. In 1892, having received from the estate of his father some $2,000 he began trading through appellees' firm, who were commission men or brokers, doing business on the Chicago Board of Trade and the New York Stock Exchange. He was well acquainted with one E. R. Shaw, an employe of appellees, and Shaw was aware of the position held by Van Bokklen in the appellant bank. Van Bokklen took from the moneys of appellant large sums, amounting, as it is claimed, to $10,000, and lost the same in deals in grain, stocks and provisions made through appellees as his brokers.

The theory upon which appellant sought to recover from appellees these moneys, thus embezzled by its employe, is, first, that appellees were in possession of knowledge of facts which should have put them upon inquiry which would have led to knowledge of the source from which Van Bokklen obtained the money thus paid by him to appellees as his agents and brokers; and second, that these sums were lost upon gaming transactions, and hence the owner of them, appellant, can recover them as Van Bokklen could if they were his, from appellees, as parties to the illegal transactions. The *narr.* consisted of the common counts. Upon plea of general issue the cause was tried with a jury and resulted in a verdict and judgment thereon for appellees. The jury returned with the general verdict three special findings, which are as follows:

1.  " Do you find from the evidence that defendants, or either of them, knew, at the time they received the money in question, or any part thereof, that the same had been wrongfully taken by Ross C. Van Bokklen from the bank of the plaintiff?"   Answer, " No."

2.  " Do you find from the evidence that the transactions in question which the defendants conducted for Ross C. Van Bokklen on the Board of Trade of the city of Chicago or on the Stock Exchange of New York were made with

the intention by defendants of receiving and delivering the commodity contracted for?"    Answer, "Yes."

3.   "Do you find from the evidence that the Board of Trade and Stock Exchange transactions were *bona fide* transactions of purchase or sale and actual receipt and delivery of the commodities in question?"    Answer, "Yes."

While it is true that appellees, through their employe, Shaw, were aware that Van Bokklen was a teller in the appellant bank, yet there is no evidence in this record which establishes that appellee had any actual notice or knowledge of the fact that Van Bokklen was stealing from appellant the moneys which he was investing through appellees.    The rule of law which applies in this State, and which controls upon the facts here presented, is that even if money transferred to an honest taker was obtained by the one transferring it through a felony, yet the honest taker, who received it without knowledge of the felony and in due course of business, would acquire good title as against the one from whom it had been stolen.    Jones v. Nellis, 41 Ill. 482; Comstock v. Hannah, 76 Ill. 530; Shreeves v. Allen, 79 Ill. 553; Murray v. Beckwith, 81 Ill. 43; Matson v. Alley, 141 Ill. 284; Bemis v. Horner, 165 Ill. 347; Hopkins v. Withrow, 42 Ill. App. 584; Webber v. Ind. Nat. Bank, 49 Ill. App. 336; Gray v. Goode, 72 Ill. App. 504; Kent v. Barnes, 72 Id. 617.

In most of the cases above cited, the rule is applied to commercial paper, but the same rule applies with even greater force to currency.    Indeed, the rule as applied to negotiable paper is derived from and based upon the English rule as originally applied to coin or other forms of currency.    The exception to the general rule of the common law that the purchaser of a chattel can acquire no better title than the vendor, was first applied to money, *i. e.* currency, and then extended in its application to negotiable paper.    Anonymous, 1 Salk. 126; Miller v. Race, 1 Burr. 452; Lawson v. Weston, 4 Esp. 56.

In Miller v. Race, *supra*, Lord Mansfield said: "The true reason is upon account of the currency of it; it can not be recovered after it has passed in currency."

The rule which in Miller v. Race, *supra*, was applied to a bank note, was extended in Lawson v. Weston, *supra*, to apply as well to a bill of exchange.

In Jones v. Nellis, *supra*, the Supreme Court of this State, at an early day, applied the same rule by like reasoning to negotiable paper, a doctrine consistently maintained down to the most recent decision in Bemis v. Horner, 165 Ill. 347.

Under a practical application of this rule, mere ground of suspicion of defect of title, or knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, will not defeat title. Bad faith alone will defeat the right of the taker without knowledge. The test is honesty and good faith—not diligence. Comstock v. Hannah, *supra*.

Measured by these rules, it is clear that the verdict, finding the issues for appellees, is sustained by the facts of the case here presented. Appellees are not shown to have had knowledge of the theft by which the moneys in question were obtained. At most it can only be said that there were grounds of suspicion, or that they were guilty of some degree of negligence. No bad faith upon the part of appellees can be predicated upon these facts. They took the money in the due course of business, and it had no ear-marks.

Counsel for appellant asserts a right of recovery upon another ground, viz., that these moneys were lost by Van Bokklen at gambling, within the statute, and hence that Van Bokklen could recover them, and appellant, as the owner, could recover them as well.

We have examined the evidence carefully to discover ground for sustaining this contention. From it all we are unable to say that the general verdict, finding, as it does, in effect, or the special answers finding in particular, that the transactions here involved were made by appellees with the intention of receiving and delivering the commodities respectively contracted for, is manifestly against the weight of the evidence.

It remains, therefore, only to consider questions of procedure.

The seventh instruction tendered by appellant was properly refused. It is in parts inconsistent with the rule above announced, in that it would put the taker of currency in the ordinary course of business upon inquiry as to the title of the payor.

The eighth and ninth instruction tendered by appellant and refused, were sufficiently covered by the fourth instruction as given by the court.

The tenth instruction tendered by appellant and refused, was erroneous and properly refused, because it in effect announced that suspicious circumstances might operate to put appellee upon inquiry as to the source from which Van Bokklen obtained the money in question.

Complaint is made of the first and second instructions given for appellees. The first should have been further qualified by the hypothesis that the money was received in the due course of business. But there is no conflict in the evidence upon the proposition that the moneys here in question were received in such due course of business, and the two instructions taken together state the rule correctly.

That part of the second instruction, which states that "it is not the law of this State that money which has once been stolen can be recovered from any person into whose hands it may afterward come," would of itself be likely to mislead the jury, but it is so qualified and explained by other portions of the same instruction that we regard it as a safe conclusion that the entire instruction could not have misled the jury.

The seventh instruction given at request of appellees is faulty in that it undertakes to inform the jury that certain facts are not conclusive evidence of one of the ultimate facts in issue. The giving of such instructions has been frequently condemned, irrespective of whether the proposition of law embodied is accurate or not.

The fifteenth instruction given at request of appellees is also faulty, but not in the respect complained of, and in the matter complained of we find no error. The instruction should not have required a degree of proof which would

convince the minds of the jury, a mere preponderance being sufficient in law.

If there is any substantial inconsistency between the sixth and fifteenth instructions given at instance of appellees, the error, if any, is in the one favoring appellant, and not in the one which could prejudice appellant; and such error would be harmless.

Complaint is made that the instructions leave the jury without guidance as to what is meant in law by the term "bad faith," as used in various of the instructions. We regard the closing portion of the fifteenth instruction, as modified by the court, as an accurate and sufficient statement in this regard. It is as follows :

"The jury are instructed that if, from a preponderance of evidence, whether direct or circumstantial evidence, the defendants, at the time they received the moneys mentioned in the evidence from Van Bokklen, had notice or knowledge that such money was not the money of said Van Bokklen, but was the money of the plaintiff bank, then such notice or knowledge would make the receipt of said money an act of actual bad faith by the defendants."

Although some of the instructions given are faulty, as above indicated, yet, taking them altogether, they are not so far inaccurate or misleading as to warrant us in treating the giving of them as reversible error. The evidence is such that we are of opinion that no prejudice resulted to appellant by reason of the instructions complained of.

The presenting of special interrogatories to the jury for their answers is assigned as error. The objections made to the submitting of the first two are not tenable. The objection to the third interrogatory is rather an objection to the answer of the jury, as not being supported by the evidence, than to the submitting of the interrogatory. If counsel for appellant is correct in the position that there is no credible evidence to establish that any of the trades and deals in question were closed by an actual delivery or receipt of the commodities traded for, yet the answer to the second interrogatory as to the intent of the appellees in making the trades for Van Bokklen, which is supported by

the evidence, is conclusive of the propriety of the verdict, irrespective of actual deliveries or receipts.

If the third special interrogatory should have been answered in the negative, so far as it referred to actual receipts and deliveries, and if it had been so answered, yet it would not have been irreconcilable with the general verdict, which is supported by the answer to the second special interrogatory. There was some evidence to the effect that stocks ordered by Van Bokklen were actually bought in New York by appellees, as his agents, and sold again; that is, that there was an actual receipt and delivery of the subject-matter of the trade. As to the transactions upon the Chicago Board of Trade, it appears that the grain ordered, bought and sold, was subject to the order of Van Bokklen, for whom the trades were made. That as a matter of fact no actual receipt or delivery was ever contemplated by Van Bokklen, might be well concluded from all the evidence; but under the decisions governing, that fact would not control, unless such intent was mutual. Pixley v. Boynton, 79 Ill. 351; Powell v. McCord, 121 Ill. 330; McCormick v. Nichols, 19 Ill. App. 334; King v. Lackey, 21 Ill. App. 132; Ware v. Jordan, 25 Ill. App. 534; Benson v. Morgan, 26 Ill. App. 22.

Complaints are also made as to rulings upon the admission of evidence. The question as to whether the sale was an ordinary sale for future actual delivery and future actual payment, put to the witness Simpson, was not objected to as being leading in form. The substance of it was not improper. It was competent for the witness to state what the agreement entered into by appellees and Van Bokklen really was. The only other objection, followed by an exception, to the testimony of this witness, relates to the question as to whether there was any agreement that the grain was not to be delivered. This was a proper inquiry. There was no error in excluding the question as to "general talk about the office," and no exception was preserved to the ruling of the court excluding it. The question put to one of appellees, "State whether your business is a plain

and legitimate business," should have been excluded upon objection. But the affirmative answer was followed by an explanation of the nature of the business, from which no other conclusion could be drawn but that it was a legitimate business. Therefore we are of opinion that the conclusion permitted to be given by the witness, though improper, was in this instance harmless. Evidence of the commission charged by appellees was not improper. They had the right to show precisely the nature of the business which they transacted with Van Bokklen. So, for the same reason, it was proper to show that the orders were executed at the risk of the customer, and that they, appellees, had no interest in the trades save to the extent of their commission.

One of the appellees was asked upon his examination if appellee had any knowledge of the source from which Van Bokklen got the money with which he traded, or if he had any suspicions as to the source. These questions were answered in the negative and without objection. Then appellee was asked if he had any ground of suspicion. This question was objected to, a negative answer was admitted over objection, and exception was preserved to the ruling. The question was improper, for it left to the witness to determine what constituted ground of suspicion. But, inasmuch as it was wholly immaterial to the question of liability whether there were or were not any grounds of suspicion, and the jury were so instructed, it is difficult to see how appellant was harmed by the error.

After a full consideration of all the objections to matters of procedure which have been pointed out by counsel, we are of opinion that no reversible error appears. And upon a careful consideration of all the evidence, we are also of opinion that the verdict was warranted, and that the judgment should not be disturbed. The judgment is affirmed.